EMANUEL W. FORD *v.* STATE OF MISSISSIPPI.

CRIMINAL LAW. *Gambling.    Code* 1892, § 1126. *Permitting games on premises.    Poker playing.    Petty stake.    Evidence.*

Under Code 1892, § 1126, forbidding owners, lessees, and occupants of buildings to permit gambling to be carried on in the same:

(*a*) Playing poker with a three, five, and ten-cent limit is gambling to the same extent as if the stakes were larger; and

(*b*) Evidence showing that the room in which the gambling was conducted was connected by a communicating door, of which defendant kept the key, with the main room of the building which defendant leased and occupied as a store, which door he would open at request, but no person could get into the room without his permission, and the goods stored therein belonged to him, is sufficient to show that defendant was the lessee and occupant of the room; and

(*c*) Where the evidence showed that defendant was a lessee of the main part of the building in which the room in which the gaming was carried on was located, and the exception of that room from his lease rested entirely upon his unsupported testimony, a charge that the jury, in determining whether defendant leased and occupied the room in question, were not bound by the terms of any contract, but were to decide the question from the character and extent of the use to which defendant put the room, was not prejudicial.

FROM the circuit court of Franklin county.

HON. MOYSE H. WILKINSON, Judge.

Ford, the appellant, was charged by affidavit in a justice of the peace's court, under Code 1892, § 1126, with knowingly permitting games of cards to be played for money in a building of which he was the lessee and occupant. He was convicted, and appealed to the circuit court, where he was again convicted, and sentenced to pay a fine of $200 and costs, and from that judgment appeals. The opinion of the court contains a further statement of the facts.

*Ratcliff & Clinton,* for appellant.

The affidavit in this case charges that the defendant knowingly permitted games of cards to be played for money in a building leased and occupied by him.    The court will observe that the affidavit is in the conjunctive, leased and occupied. There is not a word in the evidence showing that he leased it. Every witness who testified for the state said he knew nothing about that, and the defendant denied it emphatically; so, as to defendant's leasing the room, we are justified in saying that the evidence is undisputed that he did not lease it.  And as to his occupying it, the evidence falls far short of showing that character of occupancy contemplated by the statute.  It was simply an unoccupied, untenanted room, to which the general public had access and occupied it just as much as Ford did.  If the putting of an old empty barrel in it, and a little corn and cotton seed, made him the occupant, then all those people who put corn and saddles and harness in there were also occupants.  The storing away of a lot of rubbish in an outhouse, open to the public, does not make one an occupant in the sense of making him liable to prosecution in case other persons entered and gambled there. It must be such an occupancy as gives him the right of control, to say who shall enter and who not, what may be done there and what may not; but if it is a building or a room common to the general public, the mere fact that it may be used to some small extent to temporarily dispose of articles, to get them out of the way, does not, we respectfully submit, render the usee liable to be criminally prosecuted because he may chance to know that others congregated there to indulge in gambling, and we submit that the state's case failed on this vital and necessary proposition.

Again, the affidavit charges that the defendant (appellant) knowingly permitted games to be played for money.  Nowhere in the evidence does it appear that money was played for. There is not a syllable to show that any one made a bet, that any one won or lost, that any money was put up or used, or intended

to be used, on account of the game, unless it can be extracted from the expression "three-cent limit," for which the witnesses say they played. It may be argued that the presumption arising from the expression is that they bet or wagered money in the game, but we answer this argument by saying nothing can be presumed against the defendant, but every material allegation must be proven in a criminal case. In Strawbern's case, 39 Miss., 422, this court held that it must appear that money was bet or wagered by the players interested in the game and that they either gain or lose by the result. In the instant case there is no evidence that any one of the players won or lost, or that any money was put up, bet, or wagered.

*William Williams,* attorney-general, for appellee.

The facts and circumstances, as disclosed by the record, are sufficient to warrant the finding of the jury. Since the jury reached its verdict, being guided by proper instructions for the state and appellant, this court will not disturb its finding unless it was manifestly wrong.

The games played in the building leased and occupied by appellant, and over which he had control, were played sometimes at a "three-cent" and sometimes at a "ten-cent limit."

TRULY, J., delivered the opinion of the court.

Three grounds are presented by appellant, on which he seeks a reversal of the judgment in this case: First, that the testimony does not show that he was the "lessee and occupant," as averred in the affidavit against him, of the room in which the gaming was allowed to be carried on; second, that the testimony does not show that the games of cards played in the room were not simply for recreation and pastime, or that any money was wagered thereon; third, that the third instruction granted the state was erroneous.

As to the first—It appears that the room in which the card playing was conducted was connected with the main room, in

which appellant conducted his mercantile business, and which was undeniably and confessedly leased by him; that a door opened from the store directly into this room; that this door was kept closed, and that appellant alone had a key thereto; that he would open it, upon request, to allow people to enter, was often himself engaged in the game, and would invite others to join; that it was necessary to ask permission of him before players could enter the room through the store; and that he kept stored therein grain, feedstuff, and empty barrels. We think this sufficient to show that the appellant was both the lessee and the occupant of the room. One who rents a building and assumes control thereof—especially located as the record shows this one to be—naturally assumes control of all rooms connected therewith. Protection of his own business interests demands that he should have such control. There is no dispute, worthy of any notice, that appellant was the occupant and exclusively in control of the room; and, as lessee of the main portion of the building, the jury were warranted in concluding that he would not assume such entire control of every portion thereof unless legally authorized so to do.

Second—We are constrained to agree with the jury that the proof amply supports the conclusion that the games which were habitually played in the room with the knowledge and consent of appellant were for money—trifling amounts, it may be, but money nevertheless; and the degree of guilt is not dependent or calculated upon the size of the stake. The law recognizes no distinction or degree of guilt between those who indulge in games for large amounts and in palatial quarters, and those who wager more limited sums amid primitive surroundings in the back room of a village store. The testimony of several witnesses shows that the game usually played was "poker," the "limit" being fixed on different occasions at three, five, and ten cents. The very expression conveys, even to the technically uninformed, the inescapable conviction that the term so many cents "limit" means simply the maximum amount which, under

the rules of the game, can be wagered in one bet. Such terms conclusively negative the idea that the game was simply one of pastime. They smack more of gambling for gain than of purely social entertainment. Nor is the record wanting in more positive and direct testimony, for the witness Higgins testified that, while there was no regular "banker," first one man and then another would hold the money and handle the "chips," but that there was no particular man to occupy this responsible position. The jury may very reasonably have concluded that, as a "banker" is certainly an unnecessary dignitary in a game for pleasure only, the fact that some one acted in this capacity was inconsistent with the theory that no money was involved. And this, when considered in connection with the statement in reference to the limit, was sufficient to warrant the jury in deciding that the gentlemen participating in these games had a far keener and more absorbing interest than that of merely whiling away the time pleasantly together.

The third instruction for the state, complained of, simply charged the jury that, in determining the question whether appellant leased and occupied the room in question, they were not bound by the terms of any contract, but were to decide this question from the character and extent to which Ford put the rooms in use, and his control over them, as shown by the evidence. We are unable to see how, under the facts of this case, the instruction could possibly have prejudiced the rights of appellant upon the trial, especially in view of the provisions of the statute that any one permitting gambling to be carried on in his house is guilty of the offense, whether he be "lessee or occupant." The use and occupancy of the rooms by the appellant were sufficiently shown. His lease of the main part of the building was clearly established, and the excepting of the rooms from that lease rested entirely upon his unsupported testimony. No written lease was introduced, and the statement of appellant that he did not lease, and had no control over, the room, was contradicted and discredited by the testimony of

every other witness in the case, whether for state or defense. To hold that the mere denial by a defendant of the leasing and occupancy of the premises would be proof of the existence of the state of facts to which he made oath would be practically to direct the acquittal of every man charged with this offense who denied his guilt. In the very nature of things, the state, as a general rule, can only prove that the appellant is the lessee of a building by showing the character and extent of his occupancy and control over it. To hold, when such occupancy and control have been indisputably established, that the mere denial of the existence of the lease is sufficient, as a matter of law, to overthrow this proof, would leave the question of guilt or innocence dependent entirely upon the truthfulness of the party accused; and this would be tantamount, in many cases of this character, to a peremptory instruction to discharge the defendant.

Viewed as a whole, the record convinces us—as, in our judgment, it would convince any fair and impartial jury—of the guilt of the appellant; wherefore

*The judgment is affirmed.*